UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARCO CANTERO GARCIA, et al.,<br><br>       Petitioners,<br><br>  v.<br><br>CAMMILLA WAMSLEY, et al.,<br><br>       Respondents. | Case No. 2:25-cv-02092-TMC<br><br>ORDER GRANTING MOTION FOR SANCTIONS |

## I.    INTRODUCTION

In this habeas action, Petitioner Armando Benitez Chavez moves for compensatory sanctions for Federal Respondents' actions in twice transferring him to another detention facility in violation of the Court's order requiring pre-transfer notice. Dkt. 24. After reviewing the briefing, hearing oral argument, and ordering the production of supplemental evidence, the Court concludes that (1) both transfers amounted to willful violations of the Court's order; and (2) Petitioner is entitled to compensatory sanctions for the harm he suffered as a result and for his attorney's fees. The Court therefore GRANTS the motion.

## II.    LEGAL STANDARD

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Am.*

ORDER GRANTING MOTION FOR SANCTIONS - 1

*Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)). A court may impose such a sanction "pursuant to civil procedures" so long as it is "compensatory rather than punitive in nature." *Goodyear*, 581 U.S. at 108. The sanction "may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (citation modified).

A "district court acting under its inherent authority to impose compensatory sanctions must apply a 'but-for' causation standard." *Am. Unites for Kids*, 985 F.3d at 1089 (quoting *Goodyear*, 581 U.S. at 109). "In other words, but for the sanctionable misconduct, would there be any harm warranting compensatory relief? If so, a sanction might be available but must be limited to compensating for the specific harm." *Id.* at 1089–90. A court may impose a sanction under its inherent authority "either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 1090. A willful violation "does not require proof of mental intent such as bad faith or an improper motive." *Id.* "[R]ather, it is enough that a party acted deliberately." *Id.*

### III.   FINDINGS OF FACT

1. Petitioner Armando Benitez Chavez filed a petition for writ of habeas corpus on October 24, 2025. Dkt. 1. The case was reassigned to the undersigned District Judge on October 28, 2025. Dkt. 6.

2. On October 29, 2025, the Court entered an order to show cause that stated, in relevant part: "Respondents shall provide Petitioners and Petitioners' counsel in this habeas action at least 48 hours' notice (or 72 hours' notice if the period extends into the weekend) prior to any action to move or transfer any Petitioner

ORDER GRANTING MOTION FOR SANCTIONS - 2

from NWIPC [the Northwest ICE Processing Center] or to remove him from the United States." Dkt. 7 at 4.

3.  The following day, despite the Court's order, Mr. Benitez was transferred from NWIPC to a detention facility in Arizona. Dkt. 25 ¶ 4; Dkt. 26 ¶ 5; Dkt. 33 ¶ 5.

4.  Respondents did not provide Petitioner's counsel notice of the transfer. Dkt. 27 ¶ 5.

5.  Federal Respondents acknowledge that notice should have been provided. Dkt. 32 at 5. They explain that while counsel for Federal Respondents received the Court's order at 1:53 p.m. on October 29, they did not provide it to ICE until 4:09 p.m. on October 30, more than 24 hours later. Dkt. 34 ¶¶ 6–7.

6.  Counsel for Federal Respondents agreed to return Mr. Benitez to NWIPC, and he arrived back at the facility sometime between November 1 and November 3, 2025. Dkt. 26 ¶ 8; Dkt. 33 ¶ 8.

7.  Yet on November 4, ICE again included Mr. Benitez on a list of possible transferees to other facilities. Dkt. 43 ¶ 5; Dkt. 43-1. By November 5, after confirming bed space in New Mexico, ICE had placed Mr. Benitez on a list to be transferred and created an I-216, "Record of Persons Transferred." Dkt. 43 ¶ 8.

8.  Despite knowledge of the Court's order, Respondents did not notify Mr. Benitez's counsel that he was going to be transferred. Dkt. 27 ¶ 10.

9.  On November 7, the Court granted Mr. Benitez's habeas petition. Dkt. 13.

10. The Court ordered that Respondents either "release Petitioner Armando Benitez Chavez or allow his release upon payment of the alternative bond amount of $10,000 and any conditions set by Immigration and Customs Enforcement/the Department of Homeland Security." Dkt. 13 at 5.

ORDER GRANTING MOTION FOR SANCTIONS - 3

11. By 9:29 p.m. on the evening of November 7, ICE had set its bond system to accept bond for Mr. Benitez. Dkt. 33 ¶ 9.

12. Yet on either November 7 or November 8, Respondents completed the planned transfer of Mr. Benitez to a detention facility in New Mexico. *See* Dkt. 43-3 (listing date of transfer as November 7); Dkt. 43 ¶ 8 (stating the flight occurred on November 8).

13. Respondents left Mr. Benitez in New Mexico until his family was able to post his bond on November 10. He was then released there, and he incurred $498 in expenses to fly home. Dkt. 25 ¶ 7; Dkt. 26 ¶ 12.

14. Mr. Benitez was chained during both unlawful transfers. He describes that "[t]hey got us up in the early morning hours . . . We boarded a plane in Seattle, Washington; and arriving there, they do not give us a bed until we are processed. It is a lot of time without sleep and in chains." Dkt. 26 ¶ 7. "The second time I was transferred I felt worse. It is the same that you lose hope because it is the same process. It is hours of being awake in chains. You feel that you just want to give up, and request voluntary departure or a removal order." *Id.* ¶ 9.

15. Mr. Benitez seeks $5,498 in compensatory sanctions: $498 for his flight home from New Mexico, and $5,000 for the suffering he endured while chained during both transfers. *See* Dkt. 24 at 6–7.

16. Mr. Benitez also seeks $13,011.82 in attorney's fees for the time spent filing the sanctions motion. *See* Dkt. 36 at 7; Dkt. 36-1.

17. The Court finds that the following time incurred in filing the motion for sanctions was reasonable: 2.8 hours for Matt Adams; 1 hour for Glenda Aldana Madrid; 13.7 hours for Aaron Korthuis; and 1.5 hours for Amanda Ng.

ORDER GRANTING MOTION FOR SANCTIONS - 4

18. For the reasons explained in its order on attorney's fees (Dkt. 38), the Court finds that the following hourly rates are reasonable: $900 per hour for Matt Adams; $650 per hour for Glenda Aldana Madrid; $550 per hour for Aaron Korthuis; and $500 per hour for Amanda Ng.

19. The Court therefore finds that Mr. Benitez incurred $11,455.00 in reasonable attorney's fees.

## IV.   CONCLUSIONS OF LAW

1. The October 30, 2025 transfer amounts to a willful violation of the Court's order. ICE acted deliberately to transfer Mr. Benitez a day after the Court's order was issued. *See Am. Unites for Kids*, 985 F.3d at 1090.

2. Federal Respondents do not dispute that their counsel received the order the day before the transfer or that notice of the transfer to Mr. Benitez's counsel should have been provided. Dkt. 32 at 5–6. The failure to provide the order to ICE cannot excuse the violation. If that were so, compliance with the Court's orders could be disregarded so long as counsel did not transmit those orders to their clients.

3. The second transfer on November 7 or 8, 2025 was also a willful violation of the Court's order. Despite notice of the order, ICE began making deliberate preparations to transfer Mr. Benitez again on November 4, only a day or so after he was returned to NWIPC following the first unlawful transfer. The decision to transfer him was finalized on November 5 when the I-216 was created. Yet again, no notice was given to his counsel.

4. Federal Respondents originally took the position that because the second transfer was not carried out until after the Court had granted Mr. Benitez's habeas petition and entered judgment in his favor, there was no violation of the earlier order

ORDER GRANTING MOTION FOR SANCTIONS - 5

restricting transfer because it had dissolved upon entry of judgment. *See* Dkt. 32 at 4.

5. After oral argument, however, the Court ordered Federal Respondents to supplement the record with evidence of when the decision to transfer Mr. Benitez was made. *See* Dkt. 41.

6. After Federal Respondents provided that supplemental evidence, which established that the transfer decision had been made on November 5, they acknowledged that notice should have been provided. Dkt. 42 at 1–2.

7. But for the second transfer to New Mexico, Mr. Benitez would not have incurred $498 in expenses to fly home. This is a reasonable compensatory sanction for the specific harm caused. *See Am. Unites for Kids*, 985 F.3d at 1089–90; *see also id.* at 1091 (sanction requiring payment of money to repair physical damage caused was compensatory).

8. But for both unlawful transfers, Mr. Benitez would not have endured the physical and emotional suffering and indignity of two long transfer flights in chains. His request for $5,000 in compensatory sanctions is reasonable for the specific harm caused. Civil contempt law, which is analogous to civil compensatory sanctions under the Court's inherent power, "permits such an award of nonpecuniary damages." *Valdellon v. PHH Mortgage Corp.*, No. 25-538, 2026 WL 1068902, at *4 (citing *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 455–56 (1932)).

9. But for the unlawful transfers, Mr. Benitez would not have incurred $11,455.00 in reasonable attorney's fees to bring his sanctions motion. Compensatory sanctions under the Court's inherent powers can include awards for attorney's fees that are

ORDER GRANTING MOTION FOR SANCTIONS - 6

incurred because of the misconduct. *Goodyear*, 581 U.S. at 108; *Am. Unites for Kids*, 985 F.3d at 1091–92 (fees incurred in bringing sanctions motion were compensatory).

10. Mr. Benitez is therefore awarded $5,498.00 in compensatory sanctions and $11,455.00 in reasonable attorney's fees.

## V. CONCLUSION

For the reasons explained above, Petitioner's motion for sanctions (Dkt. 24) is GRANTED. Federal Respondents are ordered to pay $5,498.00 in compensatory sanctions to Petitioner Armando Benitez Chavez and $11,455.00 to Petitioners' counsel in attorney's fees.

Dated this 13th day of August, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION FOR SANCTIONS - 7